## SUPREME COURT.

### Amos A. Bissell agt. Jesse G. Pearse.

In an action for the *conversion* of personal property, claiming its value by a *mortgagee* entitled to the possession as between him and the mortgagor, the defendant cannot set up as a *counter claim* a *lien* upon the property for its keeping, under an agreement between him and the *mortgagor*, made prior to the execution of the mortgage, although when such agreement was made the property was under a mortgage to the same mortgagee, which had become inoperative by a failure to renew it during the possession by the defendant.

*General Term, Fifth Judicial District, May,* 1861.

Appeal from a judgment entered in favor of the defendant against the plaintiff on the report of Ward Hunt, Esq., referee, before whom the cause was tried. The pleadings in the case consist of a complaint and answer, and are as follows:

The plaintiff complains of the defendant, and alleges the following facts, constituting his cause of action: That on

the 25th day of January, 1859, he was lawfully in the possession of a certain gray horse, about ten years old, his own property, of the value of two hundred dollars, which property on that day he left in the possession of the defendant, to be returned to him, the said plaintiff, whenever he should demand the same.    That on or about the 28th day of May, 1859, the plaintiff demanded of the defendant a return of the said property, which the defendant refused, and the defendant has converted the said property to his own use.

Wherefore, the plaintiff demands judgment against the said defendant for the sum of two hundred dollars, with interest thereon, from the 26th day of May, 1859, besides the costs of this action.

For answer to the complaint in this action, this defendant hereby denies each and every allegation in said complaint contained.

2d.  For a further answer, this defendant states, that on or about the 4th day of December, 1858, the horse mentioned in the complaint, and three other horses, owned by one E. B. Bissell, and on that day the said E. B. Bissell delivered said four horses to said defendant at Clifton Park, Saratoga county, to be kept, fed and boarded for the winter, for which the said defendant was to receive seven shillings per week for each horse, and the same was to be paid by said E. B. Bissell before the said horses should be taken away from said defendant's possession, and it was then and there agreed that the said defendant should have the right to retain said horses until the said price for the keeping should be paid.    That in pursuance of said agreement, said four horses were delivered to said defendant, and he thereupon fed, boarded and kept them until about April 25, 1859, and that the keeping thereof, according to the price aforesaid, came to the sum of about $84, no part of which has been paid to this defendant.

That on or about April 25, 1859, the said E. B. Bissell applied to the defendant to get possession of a portion of

said horses; and it was then and there agreed between said defendant and said E. B. Bissell, that the said Bissell might take three of said horses, and that the fourth one (being the same horse mentioned in the complaint) should and might be retained by the defendant, until the keeping of the four horses should be paid as aforesaid. That in pursuance of that agreement, the three horses were on that day delivered to said E. B. Bissell, and the fourth one retained by the defendant under the said agreement, which is the same retaining mentioned in said complaint. That up to the time last mentioned, the defendant had no notice of any title or claim of the plaintiff to said property or any part thereof, but on the contrary, this defendant, in good faith, boarded said horses, and parted with the other three, upon the faith that the said E. B. Bissell was the owner of said property.

Wherefore, this defendant will demand judgment, that said horse, mentioned in the complaint, be sold for the payment of the lien aforesaid and the expenses of the sale, or for such other relief as may be just and equitable.

Upon the testimony the referee found the following facts: That on the 5th day of January, 1858, one Edwin B. Bissell was the owner and in the possession of the horse described in the pleadings in this action, and on that day executed and delivered to the plaintiff a chattel mortgage upon said horse and other property, which mortgage was duly filed in the town clerk's office, where the said Edwin B. Bissell resided, on the 6th day of January, 1858; that said mortgage was given in good faith, and without any intention to hinder, delay or defraud creditors or *bona fide* purchasers, and was given to secure the payment of a *bona fide* debt, due from the said Edwin B. Bissell to the said plaintiff, of $813, payable according to the conditions of a certain promissory note, made by the said Edwin B. Bissell, payable one year from the 5th day of January, 1858; that said plaintiff was authorized by said mortgage to take possession

of said horse and other property, at any time he deemed himself insecure, either before or after said note became due and payable. And the said referee further finds, that on the 13th day of January, 1859, the said Edwin B. Bissell executed and delivered to the said plaintiff a certain other chattel mortgage upon the horse in question, and other property, which mortgage was given to secure the payment of a *bona fide* debt due from the said Edwin B. Bissell to the plaintiff, amounting at the date of said mortgage to the sum of $485, being the balance due on the first mortgage; that said last described mortgage was, by its terms, due and payable immediately, and that the same was given in good faith, and without any intention of hindering, delaying or defrauding creditors or *bona fide* purchasers; that the same was duly filed in the town clerk's office, where the said Edwin B. Bissell resided at the time said mortgage was executed, on the 17th of January, 1859. And the said referee further finds, that on the 4th day of December, 1858, the said Edwin B. Bissell left the said horse in controversy in this action, together with four other horses, with the defendant in this action, to be kept and fed through the winter or until the spring of 1859, upon an express agreement that said defendant should have a lien upon said horse for the keeping; that the said defendant was, at the time aforesaid, and still is, a farmer, and not an innkeeper; that in the spring of 1859, the said Edwin B. Bissell demanded of the defendant said horse in question in his own behalf, claiming title under and by virtue of the mortgage herein referred to, dated January 13th, 1859; that said defendant refused to deliver the same until the keeping and the keeping of the three other horses was paid.

Upon the foregoing conclusions of fact, and upon the pleadings in this case, the said referee ruled and decided the following conclusions of law: That the defendant's second answer is a counter claim, and there being no reply thereto it stands admitted for the purposes of this action.

To which ruling and decision the plaintiff's counsel then and there duly excepted; that the defendant has a lien on the horse in question for the sum of $84, with interest, from the time of the commencement of this action; to which ruling and decision the counsel for the plaintiff then and there duly excepted; that the defendant is entitled to a judgment for a foreclosure of said lien, and for the sale of said horse, to pay the same; to which ruling and decision the plaintiff's counsel then and there duly excepted.

That if the proceeds of said sale shall not be sufficient to pay said lien, with costs, then said defendant is entitled to recover the balance of such costs against the plaintiff personally; to which ruling and decision the plaintiff's counsel then and there duly excepted.

C. W. WHITE, *for plaintiff.*
E. F. BULLARD, *for defendant.*

MORGAN, Justice. I think we cannot consider the special findings of the referee, contained in the judgment roll as part of the case, but must confine ourselves to what is contained in the case as afterwards settled by the referee. (*Johnson* agt. *Whitlock*, 3 *Kernan*, 344.) In *Smith* agt. *Grant*, (15 *N. Y. R.*,) the court of appeals, although disapproving the practice, allowed such a statement to stand, because the case as settled referred to it as " annexed," and thereby made it a part of the case.

There is no such reference here, and we must disregard the statement of facts and conclusions of law contained in the judgment roll. In the case, the referee finds as matters of fact, that one Edwin B. Bissell, mortgaged the property in question, with other property to the plaintiff, January 6, 1858, to pay a note for $813, in one year from January 5, 1858; which mortgage was duly filed in the clerk's office; and that it was given in good faith and without intent to defraud creditors or *bona fide* purchasers.

That on the fourth day of December, 1858, while said mortgage remained a valid security, the said Edwin B. Bissell left the horse in question, with other horses, in possession of the defendant Jesse G. Pearse, who was a farmer, and upon an express agreement that the defendant should have a lien upon said horse for the keeping.

That on the 13th day of January, 1859, and *after* the expiration of a year from the filing of the first mortgage, the said Edwin B. Bissell executed another mortgage on the same property, to secure payment of the balance of the debt, which amounted to $485, and which was due at the time. This new mortgage was duly filed, and the referee finds that it was also given in good faith without any intent to defraud creditors or subsequent purchasers in good faith.

That in the spring of 1859, the said Edwin B. Bissell demanded of the defendant the horse in question in his own behalf, claiming title under the second mortgage, but the defendant refused to deliver the horse up, until he was paid for his keeping and the keeping of the other horses.

It is quite probable that by mistake the name of E. B. Bissell is here substituted for the name of the plaintiff, *Amos A. Bissell.*

There is no exception to these conclusions of the referee.

By the pleadings the plaintiff, Amos A. Bissell, claims to recover the value of this horse; and the defendant, in his second answer, sets up a claim to a lien for his keeping to the amount of $84, and demands judgment that the " said horse be sold for the payment of the lien aforesaid and the expenses of the sale" or for other equitable relief.

The referee finds as matter of law upon the foregoing facts and the pleadings in this action,

1. That the defendant's second answer is a *counter claim* and stands admitted upon the record;

2. That the defendant has a lien for $84, as above stated; and,

3. That he is entitled to a judgment against the plaintiff

for a foreclosure of said lien, and for a sale of the horse to pay the same.

If the proceeds of the sale shall not prove sufficient to pay the lien and costs, he declares the defendant entitled to recover such costs personally against the plaintiff. Exceptions were taken by the plaintiff's counsel to each of these propositions.

Accompanying the case, is an opinion delivered by the referee giving his reasons for coming to the conclusions as above stated; but I have been unable to find any fact stated in the case, or any evidence, authorizing the statement in this opinion, that E. B. Bissell acted as the agent of the plaintiff in creating the lien in question.

The separate report of the referee, contained in the judgment roll, has such a statement; but the parties did not make that a part of the case; and if I am right in what I have already said upon that subject, we cannot regard it as in the case upon this appeal. I confess that I am strongly of the opinion, that the evidence entirely fails to show any such *agency;* and it is not at all impossible but that the plaintiff's counsel excepted to such a finding of fact, and that it would so appear, if it had been put into the case, as finally settled.

This fact is of considerable importance, for if the plaintiff made the agreement for the lien, he is the debtor of the defendant; and then the question, whether this claim may not be properly considered a *counter claim,* would come fairly before the court for its adjudication.

The claim to have the property sold to satisfy the lien, on plaintiff's default to pay it within a reasonable time, would be a claim in equity against this plaintiff, and not against E. B. Bissell. The difficulty would be, that it does not, within the meaning of the Code, grow out of the same transaction.

This action is for the *conversion* of the horse, which grew out of an event subsequent and distinct from the claim

of the defendant to be paid his demand for keeping the horse.   Before the Code, such a claim was not a matter of set-off, or recoupment, but was mere matter of defence to such an action as this.   But it is unnecessary to decide this precise question, for the facts as found in the case, do not warrant the conclusion, that E. B. Bissell acted as plaintiff's agent in creating the lien upon the horse in question.   It follows that the defendant has no demand against the plaintiff to recoup in this action—nor any counter claim upon which an action either at law or in equity could be maintained against this plaintiff.   The defendant's demand, is against E. B. Bissel, who would be the principal party in an action in equity to establish the lien and enforce the claim by a foreclosure and sale.   Upon this ground I think a new trial should be granted.

But I am not entirely satisfied with the conclusions of the referee in some other respects.   If the defendant can claim to be a purchaser or mortgagee within the meaning of the statute, (*Laws of* 1853, *p.* 402, § 3,) his claim is *subsequent* to the plaintiff's first mortgage.   The first mortgage is held to be *bona fide;* and when the defendant's lien was created, it was in full force and effect, the year for refiling not having expired.   The omission to refile it does not, it seems, render it invalid as against such a lien as is asserted in the case.   (*Meech* agt. *Patchen,* 14 *N. Y. R.,* 71.) But it is said in the opinion of the learned referee, that this mortgage has expired and has never been renewed.   It was, however, held in *Hill* agt. *Beebe,* (13 *N. Y. R.,* 556,) that a first mortgage was not extinguished by a *second* mortgage on the same property to secure the same debt.   Doubtless a delay in foreclosing such a mortgage, might be some evidence of a fraudulent intent to delay other creditors; but the referee has found as matter of fact, that both these mortgages were *bona fide,* as against creditors.

If the lien had been created *subsequent* to the expiration of the time for refiling the first mortgage, it would perhaps

defeat the mortgage debt by virtue of § 3, of the act already refered to. The referee speaks of the lien coming into existence,—or rather, its existence coming into force,—in the winter and spring of 1859. This was subsequent to the expiration of the year for refiling the first mortgage, and I am *unable* to understand what is here intended, unless it is, that the board of the horses was principally after the expiration of the year for refiling the mortgage, although the contract for their board was *prior* thereto. There may arise some equity to aid the case of the defendant growing out of this circumstance ; and without intending to express any decided opinion upon the various other questions which the case suggests, and which have been briefly alluded to in this opinion, I am in favor of reversing the judgment; because neither the pleadings or the facts as found by the referee entitle the defendant to the relief sought for. The second answer is a defence, but not a counter claim, and I think the referee erred in his decision upon this point, without regard to the other questions in the case.

MULLIN, Justice. The plaintiff being mortgagee of the horse, with the right to immediate possession as between him and the mortgagor, is to be deemed the owner, and on proof of a demand and refusal, to maintain an action of trover for the horse. A demand and refusal was clearly proved, and is found by the referee.

The defendant justifies his refusal on the ground that the mortgagor had delivered to him before the plaintiff's mortgage was given, the horse in question, with others, to be kept, with the agreement that he (the defendant) should have a lien on them for their keeping; that after said mortgage was given, and without any notice to the defendant of the giving any such mortgage, the mortgagor procured the release of three of the four horses kept by the defendant; and the lien for the keeping of the whole was by agreement transferred to the fourth horse, which is the one in suit,

and that the amount for the keeping never having been paid the defendant refuses to deliver up the horse so made subject to the lien.  No lien existed in favor of the defendant without an express agreement to that effect.  (*Grinnell* agt. *Cook*, 3 *Hill*, 485; *Fox* agt. *McGregor*, 11 *Barb*. 41.)

There was no proof given before the referee of an express agreement that the defendant should have a lien for the keeping.  The referee has found, nevertheless, such an agreement.  That finding, as I understand it, is predicated on the undenied allegation in the answer, that such an express agreement was made.

In order to compel the plaintiff to put in a reply to the answer, or its allegations should stand admitted, the answer must set up a counter claim.  Section 168 is as follows: "Every material allegation of the complaint, not controverted by the answer, as prescribed in § 149, and every material allegation of new matter in the answer, constituting a counter claim, not controverted by the reply, as prescribed in § 153, shall, for the purposes of the action, be taken as true ; but the allegations of new matter in the answer, not relating to a counter claim, or of new matter in a reply, is to be deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require."

The question, then, is, does the part of the answer in which the allegation of the making of the agreement to give defendant a lien is contained, set up a counter claim? If it does the referee is right ; if not then he could not find the existence of any such lien.

By § 150 of Code a counter claim is thus defined : " The counter claim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action :

1st.  A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of

the plaintiff's claim, or connected with the subject of the action.

2d. In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action."

To constitute a counter claim several things must concur:

1st. There must be a cause of action.

2d. It must arise out of the contract or transaction set forth in the complaint, or be connected with the subject of the action.

3d. It must be in favor of the defendant and against the plaintiff.

4th. It must be in a case where a separate judgment between them may be entered.

Without stopping to discuss the question whether or not there may be a counter claim in an action of tort, but assuming that there may be, the question recurs whether the claim set up in the answer is a counter claim within the true intent and meaning of the Code.

When the horses were left with defendant they were owned by E. B. Bissell; and whatever arrangement was made in reference to them was made between the said E. B. Bissell and the defendant. The plaintiff was not a party to the arrangement; nor did E. B. Bissell act, or profess to act, as his agent. There is not, therefore, any cause of action in favor of the defendant and against the plaintiff for the keeping of the horses.

The only cause of action that can be pretended, is the claim for a judgment, that the horses be sold and the lien discharged, out of the proceeds of the sale. This is not a right of action against the plaintiff; it is a proceeding in *rem*, and with which the plaintiff has nothing whatever to do, except as owner of the horse sought to be sold. The defendant's right of action does not arise out of any contract with the plaintiff.

The transaction set forth in the complaint, as the founda-

tion of the plaintiff's claim, is the illegal conversion of the horse by the defendant. The right of the defendant to proceed and sell, or to have a judgment, that the horse be sold to pay the keeping, does not arise out of the conversion, and cannot be claimed to be a counter claim on that ground. Is the defendant's right of action (if any) connected with the subject of the action?

The subject of the action is, in strictness, the conversion; but assuming it to be the horse, can the defendant's right of action be said to be connected with the horse?

The words, connected with the subject of the action, are exceedingly loose, and would embrace every conceivable claim which can arise directly or remotely from any act or omission which can be the subject of a civil suit.

It was not the intention of the legislature, I apprehend, to allow all manner of rights of action to be litigated between parties under the name of counter claims, merely because they may have had their origin in the transaction, which is the subject matter of the suit.

An assault and battery, or libel, or false imprisonment, may be connected with a sale of land, concerning which the action is brought. Yet it would hardly be claimed that, in an action for the value of the land, these causes of action could be litigated under the name of counter claims.

The connection must be more direct; it must be a cause of action springing, if I may use the term, out of the subject of the plaintiff's action, so connected with it that the claims of the respective parties ought to be in fairness adjusted in a single suit.

If a landlord sues on a lease for rent, it is proper that all breaches of his covenants should be adjusted and compensated in that action; or if the landlord is guilty of fraud, in relation to the farm, the damages of the tenant are a fair subject of counter claim.

It is, perhaps, impossible to lay down any rule by which

to determine what is and what is not a counter claim. Each case must be decided when it comes up; and it will be found much easier to decide what is not than what is a counter claim. In this case, it seems to me, there is no cause of action in favor of the defendant and against the plaintiff; and if there is, it does not arise out of contract; is not connected with the transaction, which is the foundation of the action; nor is it connected with the subject of the action in that sense which is necessary to make it a counter claim.

So far as the defendant's rights rest on contract, they do not exist against the plaintiff; so far as they rest on the lien, the right of action is in equity to foreclose; and there can be no foreclosure in this case, as the pledgor is not a party as between the plaintiff and his mortgagor. The latter has an equity of redemption, which has never been cut off. As between the mortgagor, the plaintiff and defendant, both of the former have rights of redemption, which can only be barred by a judgment in a suit in which both are parties.

If the plaintiff is foreclosed by a judgment in this case, the property must be sold subject to the mortgagor's equity of redemption, which has not been barred. A foreclosure, as against the plaintiff alone, would be an idle ceremony— an expensive and profitless proceeding—which a court of equity never sanctions nor suffers. (2 *Story's Eq. Jr.*, 1030, *et seq.*; *Story's Eq. Pl.*, § 195; *Id.*, §§ 72, 76(*a*,) 77.)

Some of the authorities cited relate to real estate; but there is no difference in principle between the rights of a mortgagor of a chattel and of a farm, as to their rights and interests, and the propriety of making them parties in suits affecting their rights. In actions to cut off equities, in regard to either real or personal property, the owners of the equities must be made parties.

The answer not setting up a counter claim, the allegations contained in it are not admitted, but are to be deemed

Hayes agt. Berryman.

denied; and, hence, there is no evidence of an agreement that defendant should have a lien for the keeping of the horses, and, of course, the action cannot be maintained.

The mere existence of the lien was a perfect defence to the action if it existed; and for the purposes of a defence affirmative relief was not necessary. If defendant had a lien, and desired to cut off the plaintiff's equity of redemption, it was competent for him to do so, by sale of the horse, upon notice to the plaintiff. (*Story on Bailments*, §§ 308, 310; *Story's Eq. Jr.*, § 1031.)

The defendant, however, had the right, instead of selling, to file his bill to foreclose. (*Story on Bailments*, § 310; *Story's Eq. Jr.*, §§ 1031, 1033.) It was also proper, perhaps, for the defendant, being sued for the property, to ask for a foreclosure by way of affirmative relief. (*Code*, § 274.) But to entitle him to affirmative relief the proper parties must be before the court. I have attempted to show that a party necessary to enable the court to grant the relief demanded, is wanting, and for that reason, if for no other, the relief prayed for ought not to have been granted.

The judgment should be reversed, and new trial ordered, costs to abide the event.

The court concurred in this opinion.